Case 2:16-cv-09194-TJH-GJS Document 36 Filed 05/22/17 Page 1 of 10 Page ID #:545

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| CIRRUS EDUCATION, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHRISTOPHER M. ADAMS, *et al.*,<br><br>    Defendants. | CV 16-09194 TJH (GJSx)<br><br>Order<br><br>[19,21] |

    The Court has considered Defendants' special motion to strike five claims from the Complaint and for attorney's fees pursuant to Cal. Civ. Code § 425.16 [the "Anti-SLAPP Statute"] and motion to dismiss all claims from the Complaint, together with the moving and opposing papers.

**Special Motion to Strike**

    This case largely concerns a letter sent in 2016 [the "2016 Letter"] by Defendants — Christopher M. Adams, David V. Adams in his capacity as trustee of the Christopher


Adams Trust, DVA, Inc., and Morgan Adams, Inc. [collectively "Adams"] — to a stock exchange in the People's Republic of China. At the time the 2016 Letter was sent, one of the plaintiffs in this action — Cirrus (Beijing) Corp. ["Cirrus Beijing"] — had an application for listing on the stock exchange. The 2016 Letter sought to notify the stock exchange, *inter alia*, of Adams's belief that Cirrus Beijing had violated one of the stock exchange's rules by failing to disclose an approximately $60 million judgment. Thereafter, Plaintiffs — Cirrus Ltd., Cirrus Education, Inc., Cirrus Beijing, and iQ-HUB PTE, Ltd. — filed the instant action. Adams, now, moves to strike five claims pursuant to the Anti-SLAPP Statute, arguing that the 2016 Letter constituted "conduct in furtherance of a person's rights to freedom of speech and petition in connection with a public issue[.]"

Plaintiffs' claims, however, are not barred under the Anti-SLAPP Statute because "petitioning activity undertaken in a foreign country is not protected by the" Anti-SLAPP Statute. *Guessous v. Chrome Hearts*, LLC, 179 Cal. App. 4th 1177, 1186 (2009). There is an exception for "statement[s] made in connection with an issue under consideration by a judicial body in the United States," *Summerfield v. Randolph*, 201 Cal. App. 4th 127, 137 (2011); however, *Summerfield* does not support the application of the Anti-SLAPP Statute in this case. In *Summerfield*, the California Court of Appeal held that where a petition is "filed in a foreign court *in order to influence the determination of issues pending in a California court*" the petition "qualifies for protection under the" Anti-SLAPP Statute. *Summerfield*, 201 Cal. App. 4th at 129 (emphasis added). Here, the 2016 Letter was sent to influence the determination of Cirrus Beijing's application pending before the stock exchange in China — not the determination of issues pending in a California court. Accordingly, the Anti-SLAPP statute does not apply to the 2016 Letter.

**Motion to Dismiss**

Adams (Defendants) were plaintiffs in a Los Angeles Superior Court case filed

in December, 2007 [the "State Court Action"]. In the State Court Action, Adams sued a number of individuals and corporations [the "Superior Court Defendants"]. None of the Superior Court Defendants are parties here. The thrust of the State Court Action was that the Superior Court Defendants owed Adams money based on Adams's involvement with the Superior Court Defendants. After an unopposed trial, the Los Angeles Superior Court entered a judgment of approximately $62 million. The judgment was appealed, and the California Court of Appeal, finding calculation errors, remanded the case.

Adams raised the issue of alter ego liability at a discovery hearing following remand. There, Adams argued, *inter alia*, that Cirrus Ltd., a plaintiff in the instant case, was liable for a judgment against the Superior Court Defendants under an alter ego theory. The remaining plaintiffs in this case are three related companies — Cirrus Education, Inc., Cirrus Beijing, and iQ-HUB PTE, Ltd. The alter ego issue, however, was never briefed or expressly ruled upon by the Superior Court.

Ultimately, the Superior Court — following a second trial — entered a judgment of approximately $60 million against the Superior Court Defendants. Additionally, the Superior Court found that Plaintiffs in the instant case were "related entities" and "successor entities" to some of the corporate Superior Court Defendants, and that Plaintiffs in the instant case were jointly and severally liable for the judgment. Subsequently, Plaintiffs in the instant case appealed, *inter alia*, the finding of successor liability to the California Court of Appeal. That appeal is currently pending.

On November 9, 2016, following the second trial, Adams sent the 2016 Letter to the National Equities Exchange and Quotations ["NEEQ"], a Chinese stock exchange regulated by the China Securities Regulatory Commission, where Cirrus Beijing had an outstanding application for listing. The 2016 Letter referred to one of the corporate Superior Court Defendants as "[t]he parent company of" and, a "related entity" to, Cirrus Beijing. Further, the 2016 Letter alleged that Cirrus Beijing was liable for approximately $60 million, and that its failure to disclose the judgment was a violation

of NEEQ's regulations.  Lastly, the 2016 Letter requested that the NEEQ review the documents attached to the 2016 Letter and "make an appropriate decision with regard[] to Cirrus [Beijing's] application for listing on the NE[E]Q, including but not limited to suspending review of, and rejecting Cirrus [Beijing's] listing."  Adams attached, *inter alia*, an organizational chart — titled "Share [*sic*] Interest Diagram (as confirmed by two judgments in the Superior Court of California) depicting Cirrus Beijing as being owned 100% by "English Exchange HK" [*sic*], which is shown as owned 100% by one of the corporate defendants in the Superior Court Action, which is shown as owned 100% by Adams and two Superior Court Defendants.

On December 12, 2016, Plaintiffs filed the instant action.  Plaintiffs asserted four claims under California law — Defamation, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage [the "Tort Claims"]  and a violation of California's Unfair Competition Law ["UCL"], Cal. Bus. & Prof. Code §§ 17200, *et seq*.  Plaintiffs, also, asserted a fifth claim for "Declaratory Relief" "establishing that [P]laintiffs . . . and the Superior Court Defendants . . . are not alter egos with respect to any potential claims by . . . [D]efendants."

The Complaint does not specifically state whether the fifth claim seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, or the California Declaratory Relief Act, Cal. Civ. Code § 1060.  The moving and opposing papers assume the Declaratory Judgment Act is the basis for the claim.  Accordingly, the Court will apply the Declaratory Judgment Act.  Further,  the Ninth Circuit has suggested that in diversity cases the Declaratory Judgment Act should apply because "the question whether to exercise federal jurisdiction to resolve the controversy" is "a procedural question of federal law."  *Golden Eagle Insurance Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir.1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (1998) (en banc).  While the caption identifies "injunctive relief" as a sixth claim, the body of the Complaint does not assert a sixth claim for

"injunctive relief." Thus, the Complaint asserts five claims: a claim under the Declaratory Judgment Act, and four state law claims.

Defendants move to dismiss the Declaratory Judgment Act claim under Fed. R. Civ. P. 12(b)(1), and the four state law claims under Fed. R. Civ. P. 12(b)(6).

**The Declaratory Judgment Act Claim**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). Jurisdiction over a Declaratory Judgment Act claim turns on a two-step test. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). First, the Court determines whether there is an actual case or controversy. *Robinson*, 394 F.3d at 669. "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Second, if a case or controversy exists, the Court "must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny." *Robinson*, 394 F.3d at 669.

Article III's standing requirements limit subject matter jurisdiction, *See Warth v. Seldin*, 422 U.S. 490, 498–98 (1975), therefore, Article III standing is properly challenged under Fed. R. Civ. P. 12(b)(1). When ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the Plaintiffs. *See Warth*, 422 U.S. at 501.

Adams contends that the claim for declaratory relief is not ripe for adjudication. "The constitutional ripeness of a declaratory judgment action depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000, 1005

(9th Cir. 2009) (quotations omitted).

Here, the issue of alter ego liability meets the case and controversy requirement. First, a substantial controversy exists because if Plaintiffs are the alter ego of the Superior Court Defendants, then Plaintiffs will be liable for the $60 million judgment from the Superior Court Action. Second, the parties interests are adverse because that judgment is in favor of Adams. Lastly, the alter ego issue is of sufficient immediacy because not only has Adams previously stated an intent to enforce the Superior Court Action judgment against Plaintiffs under an alter ego theory, but also it is unclear whether the 2016 Letter's reference to "related entities" is a reference to an alter ego relationship.

Nonetheless, at this juncture, the *Brillhart* factors weigh against proceeding with the Declaratory Judgment Act claim. "The *Brillhart* factors are non-exclusive and state that, '. . . the district court should avoid needless determination of state law issues; . . . it should discourage litigants from filing declaratory actions as a means of forum shopping; and . . . it should avoid duplicative litigation.'" *Robinson*, 394 F.3d at 672 (alterations omitted). "Essentially, the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Robinson*, 394 F.3d at 672 (quotations omitted). Additionally, the Ninth Circuit has noted additional considerations, including:

> "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a '*res judicata*' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might

>also consider the convenience of the parties, and the availability and relative convenience of other remedies."

*Robinson*, 394 F.3d at 672.

Here, Plaintiffs have appealed the Superior Court Action judgment to the California Court of Appeal. It appears that if that appeal resolves in Adams's favor — holding, for example, that Plaintiffs are successor entities to the Superior Court Defendants — then the alter ego issue will become moot. Thus, the interest in "avoid[ing] needless determination of state law issues" and "avoid[ing] duplicative litigation" weigh against hearing the Declaratory Judgment Act claim. *See Robinson*, 394 F.3d at 672. Moreover, avoiding parallel decisions on Plaintiffs' liability — a decision from this Court with respect to alter ego liability and a decision from the California Court of Appeal with respect to successor liability and "related entity" liability — furthers the interest in avoiding "entanglement between the federal and state court systems." *See Robinson*, 394 F.3d at 672.

Accordingly, the Court will dismiss the declaratory relief claim without prejudice.

**The Tort Claims**

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). To sufficiently state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, all inferences must be drawn in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Adams argues that the Tort Claims must be dismissed under California's litigation privilege, codified in Cal. Civ. Code § 47. California's litigation privilege provides

that "[a] privileged publication or broadcast is one made . . . [i]n any . . . official proceeding authorized by law[.]" Cal. Civ. Code § 47(a)–(b). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). The litigation privilege applies to filings in non-United States jurisdictions. *See Beroiz v. Wahl*, 84 Cal. App. 4th 485, 494 (2000).

With respect to the first element, "[t]he primary factors which determine whether an administrative body possesses a quasi-judicial power for section 47(b) "official proceeding" purposes are: (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts, and (3) whether its power affects the personal or property rights of private persons." *Picton v. Anderson Union High Sch. Dist.*, 50 Cal. App. 4th 726, 737 (1996). The NEEQ powers include the above three items and, therefore, qualifies as a quasi-judicial authority.

The remaining elements are met, as well. There is no contention in the Complaint that Adams was not "authorized by law" to send the 2016 Letter to the NEEQ. Further, the 2016 Letter urged the NEEQ to "make an appropriate decision with regard[] to Cirrus [Beijing's] application for listing on the NE[E]Q, including but not limited suspending review of, and rejecting Cirrus [Beijing's] listing." Consequently, the 2016 Letter was sent to achieve the objects of the litigation — provide evidence for the NEEQ to consider. Lastly, the 2016 Letter was related to the application because, on its face, it sought to alert the NEEQ to a potential violation of its rules.

Therefore, the litigation privilege bars the Tort Claims.

**The Unfair Competition Law Claim**

California's Unfair Competition Law ["UCL"] proscribes business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL applies to injuries occurring outside of California where, as here, "the unlawful conduct that form[s] the basis of the" claims occurred in California. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 n.10 (2011). For example, the UCL has been applied where the "plaintiffs' claims were based on alleged misrepresentations that were disseminated from California." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014).

Plaintiffs allege that Adams engaged in unfair competition. "Unfair competition" is "broadly define[d] as including any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quotations omitted). UCL Claims alleging false representations "must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1126, 1127.

Here, in two short sentences, Plaintiffs allege that Adams "engaged in unfair competition" when Adams made "false and defamatory statements in" the 2016 Letter "with the intent of interfering with Cirrus Beijing's listing application," and that the letter caused Cirrus Beijing's prospects to diminish. This, at minimum, fails to allege which statements are alleged under the UCL claim and how those statements constitute unfair competition. Therefore, the Complaint fails to sufficiently state the UCL claim.

Accordingly,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Defendants' motion to specially strike the Complaint pursuant to California Code of Civil Procedure Section 425.16 be, and hereby is, 𝔇𝔢𝔫𝔦𝔢𝔡.

//

**It is Further Ordered** that Defendants' motion to dismiss the Declaratory Judgment Act claim be, and hereby is, **Granted** without prejudice.

**It is Further Ordered** that Defendants' motion to dismiss the claims for Defamation, Intentional Interference with Prospective Economic Advantage, and Negligent Interference with Prospective Economic Advantage be, and hereby is, **Granted** with prejudice.

**It is Further Ordered** that Defendants' motion to dismiss the UCL claim be, and hereby is, **Granted** without prejudice.

Date: May 22, 2017

_____
Terry J. Hatter, Jr.
Senior United States District Judge